Filed 12/22/21 In re A.S. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re A.S., A Person Coming Under the Juvenile Court Law. | 2d Juv. No. B311678 (Juv. Ct. No. 21JV00073) (Santa Barbara County) |
| SANTA BARBARA COUNTY CHILD WELFARE SERVICES, Plaintiff and Respondent, v. M.M. et al., Appellants. | |

M.M. (Mother) and E.C. (Father) appeal the juvenile court's jurisdiction and disposition orders regarding their baby, A.S. (Welf. & Inst. Code, § 300, subds. (f) & (j) [Mother], (b)(1) [Father].)[1]  We affirm.

---

[1] All statutory references are to the Welfare and Institutions Code.

This appeal involves orders by the juvenile court concerning A.S., born to Mother and Father in 2021. Approximately five years earlier, Mother, then an adolescent, secretly gave birth to a baby at home and murdered the newborn by cutting his throat. The juvenile court later adjudged Mother a ward of the court based upon a finding that she committed second degree murder. We affirmed on appeal. (*In re M.S.* (2019) 32 Cal.App.5th 1177.)

Here, following the filing of a dependency petition by Santa Barbara County Child Welfare Services (CWS) and contested hearings thereafter, the juvenile court sustained allegations of the petition and ordered removal of A.S. The court also ordered that Mother and Father receive family reunification services to address Mother's mental health issues and to accept and understand the significance of the circumstances of the prior child's death. The parents now appeal these orders.

*FACTUAL AND PROCEDURAL HISTORY*

In 2021, Marian Medical Center staff contacted CWS and reported that Mother gave birth to another baby. Hospital employees knew that Mother had killed her first baby five years earlier. Employees advised CWS that Mother and Father had given the baby the same first name as their deceased child.

The CWS social worker met Mother and Father at the hospital. Mother reported that she had been released from juvenile confinement after serving time in juvenile hall and 13 months in a group home. Father stated to the social worker that Mother's mental health had improved and that he had no concerns for their baby. At the time, Mother and Father were living with the maternal grandparents.

CWS then obtained a protective custody warrant for the baby to temporarily remove him from Mother's and Father's custody. Following a contested detention hearing, the juvenile court ordered that the baby be detained. In ruling, the juvenile court judge stated: "The circumstances of the prior murder are just too concerning to have no concern about the safety of the child."

On March 2, 2021, CWS filed a dependency petition alleging that the baby was at risk of serious physical harm, Father could not protect the baby from Mother, and Mother caused the death of the baby's sibling. (§ 300, subd. (a), (b), (f).)

On March 24, 2021, the juvenile court held a contested jurisdiction hearing. The court received into evidence the CWS detention and jurisdiction reports and testimony from the CWS social worker, Father, and Mother, among others. The court also took judicial notice of Mother's section 602 wardship file.

The social worker testified that she received a hotline referral that Mother attempted suicide in 2018. Father testified that he did not believe that Mother intentionally killed their first child but acknowledged that Mother had suffered from untreated mental illness. He stated that it is "kind of hard to believe that she could have done something like that." Father also testified that he now lived separately from Mother and was prepared to care for A.S.

Mother testified that she had engaged in extensive mental health therapy during residential treatment and currently continued to participate in therapy. Mother stated that she had prenatal medical care and that she and Father had looked forward to their baby's birth.

3

Following argument, the juvenile court sustained the allegations of section 300, subdivisions (f) and (j), regarding Mother, and the allegation of section 300, subdivision (b) regarding Father. The allegation in the amended dependency petition regarding Father stated that Mother and Father had spoken only a little regarding the death of the first baby but that Father believed Mother had changed and was "different." In ruling, the juvenile court judge referred to Father's "concerning lack of appreciation for risk to the child" given that Father believed the death of the baby was "accidental."

On April 12, 2021, the juvenile court held a contested disposition hearing. The court received evidence of the CWS disposition report and the psychological evaluations performed by Doctors Laura Beltran (Mother and Father) and Carolyn Murphy (Mother only). Beltran opined that Father minimized Mother's mental health issues and her past violent act. She also opined that Mother minimized her mental health problems and that she may be superficially engaging in psychological treatment. Murphy opined that Mother presented a low to low-moderate risk for future violence and that she did not minimize killing her baby.

The CWS investigating social worker testified that Mother and Father were now living together and that they tended to minimize the risks posed by Mother to A.S. For this reason, CWS was recommending parent education classes and psychological therapy for the parents.

The juvenile court then found by clear and convincing evidence that A.S. would be at substantial risk of harm if returned to his parents and there were no reasonable means to protect him without removal. The court removed A.S. from

4

Mother's and Father's custody and placed him with the maternal grandparents.[2]  The court also ordered supervised visits and family reunification services for Mother and Father.

On appeal, Father challenges the jurisdiction findings made pursuant to section 300, subdivision (b)(1), and further asserts that insufficient evidence supports removal of the child from his custody.  Mother joins Father's brief pursuant to California Rules of Court, rule 8.200(a)(5).

*DISCUSSION*

*I.*

Father argues that the jurisdiction finding of section 300, subdivision (b)(1) does not rest upon sufficient evidence.  He points out that he has never had an opportunity to supervise or protect A.S. and thus there is no evidence of risk of harm to the child.

In reviewing the sufficiency of evidence to support a jurisdiction or disposition order, we review the entire record to determine if the evidence and all reasonable inferences therefrom support the orders.  (*In re Cole L.* (2021) 70 Cal.App.5th 591, 602.)  We do not reweigh the evidence or reassess the credibility of witnesses.  (*Ibid.*)  Although substantial evidence is a deferential standard, it is not "toothless."  (*In re I.C.* (2018) 4 Cal.5th 869, 892 [evidence supporting jurisdiction finding must be considered in light of the whole record].)

Sufficient evidence supports the juvenile court's finding pursuant to section 300, subdivision (b)(1).  Section 300, subdivision (b)(1) requires the court to find that there is "a substantial risk that the child will suffer[] serious physical harm

---

[2] Mother and Father no longer live with the maternal grandparents.

or illness" as a result of the failure or inability of the parent to supervise or protect the child.  Here Father lacked insight into Mother's mental illness and the circumstances of the murder of the first baby.  Father stated that the baby's death was an accident and that Mother did not intentionally kill him.  Father also stated that he had no concerns about Mother's mental health.  Doctor Beltran opined that Father was "unfit to care for and protect the child at this time" due to Father's lack of understanding of the murder of the baby as well as his lack of knowledge regarding Mother's mental illness.  In ruling, the juvenile court judge stated that the evidence "doesn't fill us with assurance . . . [that Father] would be adequately protective of the child when [Mother] wishes to visit."  This evidence and reasonable inferences therefrom support the jurisdiction finding.

*II.*

Father contends that insufficient clear and convincing evidence supports the disposition order.  He asserts that he is a nonoffending parent and that the juvenile court speculated that he might violate the court's order regarding Mother's supervised visits.

Section 361, subdivision (c)(1) permits a child to be removed from a parent's home if there exists clear and convincing evidence of a "substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor" from a parent's physical custody.  Removal may be appropriate even if the parent is not dangerous and the child has not yet been harmed.  (*In re Francisco D.* (2014) 230

6

Cal.App.4th 73, 83.)  The focus of the dependency proceeding is to prevent harm to the child, not punish the parent.  (*Ibid.*)

Father's arguments are unavailing because he is not a non-offending parent and his belief that the prior baby's murder was an accident presents credible evidence of current risk of harm. Father found it "hard to believe" that Mother could have intentionally killed their baby.  Doctor Beltran opined that Father was unfit to care for and protect A.S. because he minimized Mother's mental health problems and prior violent act.  The court properly found that Father's lack of appreciation for the circumstances of the baby's murder and Mother's mental health problems posed a substantial risk of harm to A.S.

## DISPOSITION

The orders are affirmed.


GILBERT, P. J.

We concur:


YEGAN, J.


TANGEMAN, J.

7

Jed Beebe, Judge

Superior Court County of Santa Barbara

_____

Jesse F. Rodriguez, under appointment by the Court of Appeal, for Defendant and Appellant M.M.

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Appellant E.C.

Rachel Van Mullem, County Counsel, Lisa A. Rothstein, Deputy Counsel, for Plaintiff and Respondent.